UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | Criminal No. 2:23-cr-20482 |
| Plaintiff, | Honorable Jonathan J.C. Grey |
| vs. | |
| Aaron Height, | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Aaron Height shot a man in the chest over a pair of sneakers, shot a woman in the head during one of the three times he shot into her house, and shot at a third woman's home, all within the span of less than three months. He presents an extreme danger to the community, and the Court should fashion a sentence that protects the public from his dangerous conduct. For the following reasons, and for those to be articulated at the sentencing hearing, the United States respectfully requests the Court impose a sentence of 300 months.

## I.    Background

### A.    Circumstances of the Offense

Height was indicted with six counts of being a Felon in Possession of a Firearm or Ammunition in connection with five shootings that occurred between October 30, 2022, and January 11, 2023. (Second Super. Indictment, ECF No. 33).

In sum, the government alleged that Height: 1) shot at one victim's house, T.C., on three different occasions; (2) shot at a second victim's house, T.B., on one occasion; (3) possessed two firearms during a traffic stop, one of which was used in the shooting of T.B.'s house, and (4) shot a third victim, O.F., on one occasion. These counts are summarized as follows:

| Offense Date | Count | Victim | Incident |
|---|---|---|---|
| 10/30/2022 | 1 | T.C. | Shooting at T.C.'s House |
| 12/24/2022 | 3 | T.C. | Shooting at T.C.'s House |
| 12/25/2022 | 4 | T.C. | Shooting at T.C.'s House |
| 12/25/2022 | 5 | T.B. | Shooting at T.B.'s House |
| 12/25/2022 | 6 | N/A | Possession of Firearms During Traffic Stop |
| 1/11/2023 | 2 | O.F. | Shooting of O.F. |

Height pleaded guilty to Count 2. The circumstances of that offense are as follows.

On January 11, 2023, at around 3a.m., Height shot a man in the chest. (PSR ¶ 16). Specifically, Height was at a female friend's house when he began arguing with O.F. about a pair of sneakers. (*Id.*). Height hit O.F. in the head with a liquor bottle, giving O.F. an open wound. (*Id.*). While O.F. was on his knees, Height poured Comet household cleaner into O.F.'s wound. (*Id.*). When the female friend arrived at the scene, Height forced her to kneel with O.F., forced O.F. to remove his pants, and held both of them at gunpoint. (*Id.*). Height then shot O.F. in the chest and fled. (*Id.*). O.F. suffered life-threatening and permanent life-altering

2

injuries resulting in damage to multiple internal organs, but luckily, he survived. (*Id*.).

Officers recovered the firearm that Height used to shoot O.F. on the lawn of the house. (*Id*. ¶ 17).

During a jail call five days after the shooting, Height confessed that he caught O.F. with Height's custom Jordans that he just got and stated, "so I popped him in his chest. I beat him in the head with a 42 bottle. I was going to shoot [the female] too but she ain't have nothing to do with the shit." (*Id*. ¶ 20).

**B.**     **History and Characteristics**

**A. Other Shootings**

As alleged in Counts 1, and 3–6 of the Second Superseding Indictment, Height committed four other shootings, and unlawfully possessed firearms, between October 30, 2022 and December 25, 2022. Although Height was not convicted of these counts, his conduct is relevant to the Court's consideration of his history and characteristics. The primary evidence in support of those counts is follows.

**1. October 30, 2022 Shooting at T.C.'s House**

On October 30, 2022, at approximately 7:30a.m., multiple shots were fired into T.C.'s house, and T.C. was shot in the head. (Ex. A at 4). Officers found spent shell casings at the scene. (*Id.*). T.C. believed that Height was responsible. (*Id.*).

### 2. December 24, 2022 Shooting at T.C.'s House

On December 24, 2022, at around 4:45a.m., a man fired multiple shots into the back of T.C.'s house. Officers found spent shell casings at the scene. (*Id.*). T.C. believed that Height was again responsible. (*Id.* at 5).

### 3. December 25, 2022 Shooting at T.B.'s House

The following morning, shots were fired inside the front of T.B.'s house. (*Id.* at 5). T.B. purchased crack cocaine from Height, and earlier that day or the day prior, he beat with her a broomstick over a drug dispute. (*Id.*). There was also surveillance video of a black Chevy Suburban pulling up in front of T.B.'s home at the time of the shooting. Officers found spent shell casings at the scene. (*Id.* at 6). Officers saw Height driving a black Chevy Suburban at a gas station 1.6 miles from T.B.'s house about an hour before the shooting. (*Id.*).

### 4. December 25, 2022 Shooting at T.C.'s House

While officers were on scene at T.B.'s house, they learned that shots were also fired into T.C.'s house that morning, where officers also found spent shell casings. (*Id.* at 7). Greenlight footage depicted a black Kia Optima fleeing from the scene. (*Id.*).

### 5. December 25, 2022 Possession of Firearms During Traffic Stop

That morning, officers found a black Kia Optima parked at Height's house, with multiple spent shell casings inside. (*Id.* at 8). Shortly after finding the Kia,

officers conduct a traffic stop of Height and his uncle in a different vehicle. (PSR ¶ 68). Height had two firearms in his pants pocket. (*Id*). Height's uncle said that Height had been driving the Kia for about one week. (Ex. A at 8).

### 6. NIBIN Matches

There was a NIBIN lead between the shell casings found inside the Kia on December 25 that was located at Height's house and the shell casings found at T.C.'s house that same morning. (Ex. A at 9). There was also a NIBIN lead between the shell casings found at T.B.'s house on December 25 and one of the firearms found on Height that same morning.

### 7. Height's Admissions

When police arrested Height on January 11, 2023 in connection with O.F.'s shooting, they took him to the hospital. While there, Height stated, "My gun is better than yours, just ask [T.C.] on 24th Street. Ask me why her house keeps getting shot up. It's the green and brown house. I keep shooting it up they won't die. [T.C.] is my cousin. I shot her in the head on accident when I was shooting up her house." (PSR ¶ 39).

During a January 29, 2023 jail call, Height stated: "I got three attempt murders bro, two gun possessions, and I got witnesses. [T], uh Scar's niece snitches on me, I shot her in the head . . . . I knocked a whole chip off the back of her head bro. It's a thin glass, I seen her head bro, it's a chip, a whole corner

missing out the back part of her head, the left side. She got hit with a .223 bullet; she fucked up." T.C.'s house is in fact green and brown, and Height's description of the injury and bullet type are both accurate.

On July 9, 2023, Height posted an Instagram video threatening "snitches," naming T.B. and T.C.

### B. Criminal Convictions

Height has an extensive criminal history spanning from 1998 to 2023.

Between 1998 and 2022, he was convicted of two traffic/ordinance violations and three controlled substance offenses, including Delivery/Manufacture of Less than 50g for a Narcotic or Cocaine. (PSR ¶¶ 40–44).

In 2006, he was convicted of Felonious Assault after assaulting a man in a gas station who did not have any change to give Height. (*Id*. ¶ 45).

In 2009, he was convicted of Assault and/or Battery. (*Id*. ¶ 46).

Between 2009 and 2010, he was convicted of six property and identification related offenses, including Larceny. (*Id*. ¶¶ 47–51, 53).

In 2009, he was convicted of Arson-Real Property after he started a fire in his cell block while incarcerated at the Detroit Police Department. (*Id*. ¶ 52).

In 2011, he was convicted of Unarmed Robbery after robbing a Verizon store. (*Id*. ¶ 54).

Between 2019 and 2022, he sustained four traffic-related convictions. (*Id.* ¶¶ 55–58).

In 2022, he was convicted of Delivering/Manufacturing Less than 50g of Narcotic or Cocaine. (*Id.* ¶ 59).

## II.     Applicable Legal Standards

Familiar legal principles guide the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark" and thus remains an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Court then considers the factors set forth in 18 U.S.C. § 3553(a).

## III.     Guidelines Range and Height's Objections

The government agrees with the Guidelines calculation in the PSR, which provides for a total offense level of 34 and a criminal history category of VI, resulting Guidelines range is 262 to 327 months. (PSR ¶ 110). His count of conviction carries a mandatory minimum sentence of 15 years. (*Id.* ¶ 109).

Height had six objections to the PSR, all of which have either been withdrawn or adequately resolved.

## IV.     The Section 3553(a) Factors

The Section 3553(a) factors warrant a sentence of 300 months (just over the mid-point of the guideline range), which would reflect the nature and seriousness of Height's offense, account for his criminal history, and most importantly, protect

the public from his further crimes. The seriousness of Height's offense is self-explanatory–he shot a man in the chest over a pair of sneakers, almost killing him. And he did so after callously pouring cleaning powder into the man's head wound, forcing him to the floor at gunpoint, and making him remove his pants. This senseless violence is underscored by the nonchalant way in which Height admitted to his conduct during a jail call.

And this senseless violence was part of a disturbing pattern. His criminal history demonstrates a completely disrespect for the law. At 47 years old, he has been in and out of jail or on probation consistently since 1998. And over the 2.5 months leading up to the shooting of O.F., he committed four other shootings. He tried to kill T.C. and other occupants in her house on three separate occasions, once shooting her in the head, and then lamenting in a jail call that she "just won't die." And on the same day as one of those shootings, he also shot at another victim, T.B.'s house, after beating her with a broomstick over a drug argument. Simply put, Height has little or no regard for human life and poses an extreme danger to others.

Although Height was not convicted in connection with the four shootings discussed above, the Court should still consider the evidence of his involvement. Ignoring the evidence would be contrary to congressional directives. Indeed, "[t]he court, in determining the particular sentence to be imposed, *shall consider . . .* the

history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (emphasis

added); and, "[n]o limitation shall be placed on the information concerning the

background, character, and conduct of a person convicted of an offense which a

court of the United States may receive and consider for the purpose of imposing an

appropriate sentence." 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. Taken together, these

statutes establish that it is entirely appropriate—even required—that this Court

consider the evidence implicating Height in the shootings when fashioning a

sentence that is "sufficient, but not greater than necessary."

This mandate holds even if that conduct is based on uncharged or un-

convicted criminal activity. "[T]he Supreme Court has confirmed that sentencing

courts may look to uncharged criminal conduct, indeed even acquitted conduct, to

enhance a sentence within the statutorily authorized range." *United States v.*

*Rayyan*, 885 F.3d 436, 441 (6th Cir. 2018) (citing *Witte v. United States*, 515 U.S.

389, 399–400 (1995)). As one court explained, "[l]ike other prior criminal conduct,

whether or not related to the offense of conviction, it is part of the history and

characteristics of the defendant that the district court shall consider in imposing an

appropriate sentence, 18 U.S.C. § 3553(a)(1), and it may be relevant in a particular

case to the factors enumerated in 18 U.S.C. § 3553(a)(2)." *United States v. Waller*,

689 F.3d 947, 960 (8th Cir.2012) (quoting *United States v. Loaiza-Sanchez*, 622

F.3d 939, 942 (8th Cir.2010)) (internal quotations omitted); *see also United States*

*v. Overstreet*, 713 F.3d 627,637-38 (11th Cir. 2013). This Court should, when fashioning an appropriate sentence, place meaningful weight on Height's involvement in the four other shootings leading up to that underlying his instant conviction.

In sum, Height's offense and his criminal history demonstrate that he is an immense danger to the community and that a sentence of 300 months is necessary to reflect the serious nature of his conduct and protect the public.

Respectfully Submitted,

JEROME F. GORGON JR.
Acting United States Attorney

*/s Ranya Elzein*
Ranya Elzein
Andrew Picek
Assistant United States Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0213
ranya.elzein@usdoj.gov
andrew.picek@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that on November 18, 2025, I electronically filed the

foregoing document with the Clerk of the Court using the ECF system which will

send notification to the attorneys of record.

*/s Ranya Elzein*

Ranya Elzein

Assistant United States Attorney

211 West Fort Street, Suite 2001

Detroit, Michigan 48226-3211

(313) 226-0213

ranya.elzein@usdoj.gov
